UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| LOURDES RIVERA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FIRSTBANK PUERTO RICO,<br><br>Defendant. | Civil Action No. 20-1122<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Lourdes Rivera, on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1. Plaintiff brings this action on behalf of herself and classes of all similarly situated consumers against Defendant First Bank Puerto Rico ("FBPR" or "Bank") arising from the Bank's routine practice of (a) causing its accountholders to incur two separate fees for using an out of network ATM to withdraw cash; and (b) causing its accountholders in some circumstances to incur three separate fees for using an out of network ATM to withdraw cash. Both practices violate FBPR's contract.

2. First, FBPR has been sneaking small charges onto its accountholders' checking accounts to pad its bottom line. FBPR has for years been assessing out-of-network ATM fees ("OON Fees") when its accountholders use a non-FBPR ATM—in addition to the usage fees charged by the ATM owner. But FBPR never adequately informs its accountholders that use of

1

an out-of-network ATM withdrawal would incur <u>two fees</u>—one from the ATM owner and a second one from FBPR.

3. ATM fee revenue has risen dramatically in recent years for FBPR and other banks, and has become one of the primary drivers of bank fee income. FBPR assesses OON Fees on its accountholders who withdraw funds from ATMs not owned by FBPR.

4. These fees add up very quickly—to accountholders' detriment and surprise. Not only does the non-bank ATM operator charge the consumer a fee for use of its ATM, a charge which now averages $3, but FBPR charges its own out-of-network fee ("OON Fee") as well, withdrawing an additional $1 fee directly from consumers' accounts. This is a punishing double-fee on accountholders who make a simple ATM withdrawal.

5. Though the fee amount is small, the consequences of repeated assessment of the such undisclosed fees can be devastating. By taking precious funds from consumers' accounts, the unlawful and contractually unauthorized assessment of these small, undisclosed OON Fees creates a snowball effect for consumers like Plaintiff.

6. FBPR does not stop there, however. On some out-of-network ATM withdrawals, FBPR accountholders pay a *third* fee when withdrawing funds at an out-of-network ATM—one fee to the ATM operator and *two* OON Fees to FBPR. Specifically, when FBPR accountholders accept the ATM prompt and check their account balance prior to withdrawing funds at an out-of-network ATM, FBPR charges its accountholder two OON Fees—*one for the balance inquiry and one for the withdrawal*.

7. For a simple out-of-network ATM withdrawal, for example, Plaintiff paid a total of $3.50 for three separate fees, including $1.50 for two separate fees to FBPR.

8. Plaintiff, and other FBPR customers, have been injured by FBPR's improper practices. On behalf of herself and the class, Plaintiff seeks damages, restitution, and injunctive relief for FBPR's breach of contract and violation of the common law.

## PARTIES

9. Lourdes Rivera is a resident of Toa Alta, Puerto Rico, and holds a FBPR checking account.

10. Defendant FBPR is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. FBPR has its headquarters in Santurce, PR. FBPR has approximately $12 billion in assets and provides banking services to customers through bank branches in Puerto Rico, the US Virgin Islands, Florida, and the British Virgin Islands.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed classes are comprised of at least 100 members; (2) proposed class members reside in at least eight states, meaning at least one member of the proposed classes resides outside of Puerto Rico; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because FBPR is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.     FBPR IMPROPERLY CHARGES OUT OF NETWORK ATM FEES**

13.     When a consumer uses an ATM not owned by his home bank, she or she is often assessed a fee by the ATM operator.  Some (but by no means all) banks then add their own out-of-network fee for out-of-network ATM use, on top of the owner fee, the latter, which now averages more than $3 nationwide.

14.     For years, FBPR has been assessing $1 OON Fees on out-of-network ATM transactions, <u>in addition</u> to fee assessed by ATM owners. But unlike other banks that charge such a fee, FBPR never once told its accountholders that it would cause the assessment of <u>two separate fees</u> for an out of network ATM use, either in account opening documents or any subsequent disclosures, and has never disclosed that both the ATM owner and FBPR will assess separate fees for such a usage.

15.     Plaintiff has a FBPR checking account, which is governed by FBPR's standardized account agreement.

16.     FBPR issues debit cards to its checking account customers, including Plaintiff, which allow its customers to have electronic access to their checking accounts for purchases, payments, and ATM withdrawals at both FBPR and non-FBPR ATMs.

17.     Pursuant to FBPR's current Deposit Agreement, Exhibit 1:

> The terms ATMs and ATM machines also apply to the devices that provide some, but not all, of the functions described here. Each card issued to a Ditch is referred to in this Part as an "ATM card" and the term may include one or more cards.
>
> 1.     Use of ATM cards. If you have an ATM card that provides access to your deposit accounts with FirstBank, you can use the Person Identification Number, at any of the ATM machines, to make transactions such as:

--Remove cash from accounts ...
--Make deposits to cents in ATM machines that allow deposits
--Know the balance in the accounts ....

These transactions can be made with your ATM card, provided that the services are available through the ATM machine you use [.]

2. Services Available in the Machines of Other Institutions. The services we offer include the right to use your ATM card in our ATM machines as well as in ATM machines that belong or are operated by other financial institutions that participate in several networks in which FirstBank participates ... When you use your card ATM in any ATM machine in any of the networks, you can only withdraw cash from, and know the balance in your checking and savings accounts.

The services available in the network ATM machines are more limited than the services available in our ATM machines. However, you could transfer funds between your Checking and Savings Accounts and between portions of your Combined Account on some Network ATM machines.

Any of the participating networks or financial institutions may, from time to time, eliminate or restrict the services described above. In addition, **participating financial institutions may charge you for the use of your Network ATM machines [.]**

4. Charges. **We reserve the right to impose additional charges and change charges by notification.**

18. While the Agreement informs accountholders that the ATM <u>owners</u> may assess a "charge" for the "use" of their ATM machines, there was no "notification" anywhere that FBPR would impose its <u>own</u> charges in addition, either in the Deposit Agreement or in the separate Fee Schedule designed to provide detail on all fees.

19. Indeed, Pursuant to FBPR's Fee Schedule, Exhibit 2, only a single fee is to be assessed for using at ATM for an out of network "withdrawal":

Information of balances in ATMs, except if you use FirstBank machines: 50 cents each

Withdrawals at ATMs other than FirstBank, outside the ATH network: $ 1

20. While FBPR discloses that an out of network ATM <u>owner</u> may charge its own usage fees, FBPR's deposit agreement never discloses that it will <u>also</u> charge its <u>own</u> fee for use of a non-FBPR ATM.

21. Read in conjunction with the deposit agreement provision quoted above—which only states that the ATM owner will charge a fee—the Fee Schedule indicates to reasonable consumers like Plaintiff that the total fee for using a non-network ATM for a withdrawal is $1.00

22. This is especially true because FBPR's Deposit Agreement and Fee Schedule never once states the truth: that its OON Fee of $1 is <u>in addition</u> to fees that will be charged by the ATM owner.

23. For perspective, it is helpful to review how other leading Banks in the U.S. disclose their OON Fees. For example, Bank of America—consistent with the vast majority of other banks in the state and in the country—states in its standard account agreement:

> When you use an ATM that is not prominently branded with the Bank of America name and logo, <u>you may be charged a fee by the ATM operator</u> or any network used and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer. <u>We may also charge you fees.</u>

(emphasis added).

24. Similarly, Bank of America's Fee Schedule states:

> Non-Bank of America ATM Fee for: <u>Withdrawals, transfers and balance inquiries at a non-Bank of America ATM in the U.S. $2.50 each.</u>
>
> When you use a non-Bank of America ATM, <u>you may also be charged a fee by the ATM operator</u> or any network used and

> you may be charged a fee for a balance inquiry even if you do not complete a funds transfer.

25. Puerto Rico-based banks do the same thing. For example, Banco Popular expressly states the truth, something FirstBank fails to do:

> Withdrawals at privately owned ATMs that are not members of the ATH Network…$2.00 Applies to each withdrawal. **The ATM owner may assess other fees.**

26. Upon information and belief, FBPR is the only leading bank in Puerto Rico that omits this express disclosure that two fees will be assessed for out of network withdrawals and is thus the only leading bank in Puerto Rico that deceives consumers regarding the presence of two fees for every non-network ATM withdrawal.

27. In short, when FBPR accountholders use a non-bank ATM, the fees add up very quickly--to the surprise of consumers like Plaintiff.

28. FBPR never adequately informs consumers they will be charged two separate fees for each non-bank ATM withdrawal, and never once tells consumers the total amount of that double-fee.

29. Neither FBPR nor the ATM owner informs the consumer of the total charge for a single ATM withdrawal. Indeed, at the moment a consumer withdraws funds from a non-bank ATM, that ATM displays a screen asking the consumer to accept the ATM owner's fee before proceeding with the withdrawal. But that fee does not include the additional fees assessed by the consumer's own bank. And FBPR's account disclosures never explicitly tell consumers the total charge for out of network ATM fees, or even that the Bank will, as a matter of course, always charge its own out of network fees in addition to ATM owner fees.

30. The Bank's failure to ever plainly tell consumers the total fee amount they will pay for a non-bank ATM withdrawal is by design. The Bank knows full well that consumers

7

would not knowingly pay $4 or $5 for a simple withdrawal. So the Bank ensures that full fee is only partially disclosed, in steps, in a murky and non-transparent way.

31. This is a classic example of "drip pricing," which is known to be an unfair and deceptive sales practice.

32. Academic research into pricing schemes such as FBPR's refer to the scheme as "partitioned pricing," in which a product or service's price is divided into a base price (charged for the product or service itself), and mandatory surcharges associated with that product or service. Other commentators refer to such schemes as "drip pricing."

33. There are several reasons "drip pricing" or "partitioned pricing" harms consumers and has a negative effect on free and fair competition.

34. Framing prices via the use of "drip" or "partitioned" pricing has a powerful ability to influence and mislead, leading consumers to spend more than they intend to, or purchase a product that does not meet their needs, or a product that leads to another market-inefficient outcome. It also places honest competitors who do not engage in drip or partitioned pricing at a significant disadvantage.

35. Academic research has shown that consumers can be detrimentally influenced by the "base" price provided for a product or service, rather than ancillary fees that ultimately increase the total price.

36. Such research has shown that consumers perceive that products with "partitioned" prices have lower total costs than products using an equivalent combined price. Lower price perceptions lead to higher demand for the "partitioned" price product or service.

37. According to USA Today, "the average fee consumers pay to withdraw cash from an ATM outside their bank's network is a record $4.52 per transaction, according to a new

survey from Bankrate.com. That amount is a combination of two fees, rather than one, which may come as a surprise to some consumers" (emphasis added).

38. As discussed above, FBPR's account documents do nothing to place consumers on notice of the large double-fee for a simple ATM withdrawal.

39. Plaintiff's experience is illustrative. On January 27, 2020 Plaintiff withdrew $80 in cash from an out of network ATM in Bayamon, PR. The ATM owner charged Plaintiff $1.99 for the use. In addition, FBPR charged Plaintiff an undisclosed OON Fee of $1 — resulting in a total of $2.99 in fees.

40. FBPR's assessment of OON Fees violates its contract with accountholders.

## II. FBPR CHARGES TWO OON FEES FOR CERTAIN OUT OF NETWORK ATM WITHDRAWALS IN VIOLATION OF ITS CONTRACT

41. When consumers use ATMs not owned by their own bank, federal law requires the owners of those out of network ATMs to inform users of the amount of the usage fees charged by the ATM owner.

42. Thus, it is standard at ATMs in the United States that when a consumer uses an ATM not owned by his home bank, a message is displayed on the screen stating that usage of the ATM will cost a specified amount to proceed with a withdrawal of funds, and that such a fee is in addition to a fee that may be assessed by a consumer's financial institution for use of the ATM.

43. That message appears only after a user has decided to perform a cash withdrawal and entered the amount of cash she or she would like to withdraw.

44. Through repeated exposure to such fee warning messages, consumers are accustomed to being warned of fee assessments at out of network ATMs, and to being provided

9

with the opportunity to decide whether the fees charged are reasonable—before proceeding with their cash withdrawal.

45. FBPR knows this—that consumers expect a fair fee disclosure at the ATM—and has designed a scheme to assess OON Fees on "balance inquiries" and exploit consumers' reasonable expectation that they will be provided an opportunity to cancel actions before being assessed a fee. That scheme involves assessing fees for the mere act of checking a balance before proceeding with a cash withdrawal.

46. Most ATM display screens immediately ask consumers if they would like to "check their account balance" before proceeding with their transaction.

47. The ATM screen does not disclose that a balance inquiry alone will incur a usage fee, and indeed ATM owners in the United States in general do not charge usage fees for balance inquiries.

48. Repeated exposure to such messages is partly responsible for building the reasonable consumer understanding that a balance inquiry is a common lead-in to a withdrawal, a mere first step to the real business at hand, an informational exercise offered by the ATM to help inform the cash withdrawal.

49. Reasonable consumers like Plaintiff do not, in sum, understand a balance inquiry to be an independent transaction worthy of a separate fee.

50. FBPR knows this——that consumers expect a balance inquiry fee to be an included part of a cash withdrawal—and has designed a scheme to assess OON Fees on those balance inquiries. The Bank preys on the common sense that a balance inquiry preceded by a cash withdrawal is not an independent basis for a fee.

51. Thus, in most circumstances, there is simply no warning at the ATM that a balance inquiry alone could incur a fee.

52. As a result, consumers have zero expectation that their home bank will charge a separate fee for a balance inquiry that is part of the same cash withdrawal at the same ATM.

53. If a bank is going to charge such a conscience-shocking fee, it must fully and fairly disclose such a fee in its account documentation. FBPR did the opposite—providing express and implied indications that balance inquires would not incur OON Fees.

54. Against the backdrop of the reasonable consumer expectations and federal law above, FBPR's disclosures deceive consumers and reinforce the reasonable understanding that no fee will be assessed for a balance inquiry when such an inquiry is in conjunction with a cash withdrawal at the same ATM —especially if ATM users are not warned beforehand.

55. As discussed above, the disclosures state:

Use of ATM cards. If you have an ATM card that provides access to your deposit accounts with FirstBank, you can use the Person Identification Number, at any of the ATM machines, to make transactions such as:

--Remove cash from accounts ...
--Make deposits to cents in ATM machines that allow deposits
--Know the balance in the accounts ....

[…]

Any of the participating networks or financial institutions may, from time to time, eliminate or restrict the services described above. In addition, **participating financial institutions may charge you for the use of your Network ATM machines [.]**

[…]

Information of balances in ATMs, except if you use FirstBank machines: 50 cents each

Withdrawals at ATMs other than FirstBank, outside the ATH network: $ 1

56. <u>First</u>, in general, and in Plaintiff's case here, the ATM owner does not warn the user that there is a separate charge for a balance inquiry undertaken in conjunction with a cash withdrawal, and in fact the ATM owner does not charge a separate fee to the user for a balance inquiry undertaken with a cash withdrawal. Therefore, the user can have no reasonable expectation that his home bank will assess a fee for an action that the ATM owner does not charge or warn about.

57. <u>Second</u>, the Fee Schedule reasonably indicates that all actions pursuant to a withdrawal will result, at most, in a fee of $1.

58. When a consumer initiates a transaction at a non-network ATM in order to withdraw cash, he is immediately presented with a balance inquiry question, with no warning that such an inquiry could cause a fee from either the ATM owner or the consumer's bank. During that same session, he then proceeds to withdraw cash. When the Fee Schedule promises a $1 fee for a withdrawal, that must be read to include all acts and services incident to that withdrawal. Cash withdrawal transactions at ATMs should be understood to include reasonable *accoutrements*—selecting an account, viewing a balance, receiving a receipt at the end. A balance inquiry, especially one undertaken in conjunction with a cash withdrawal, is not reasonably understood as a stand-alone, fee-worthy event.

59. In light of the foregoing, the only reasonable interpretation of the bank's Fee Schedule is that the use of an ATM for a cash withdrawal will incur total fee of $1, whether or not a balance inquiry or other lead-in to a cash withdrawal is also performed. Indeed, there is no indication in the fee schedule that more than one $1 fee can be charged on a single ATM use.

60. Moreover, accountholders using a non-FBPR ATM are never warned that they will receive <u>three separate fees</u> from FBPR when they check their balance before proceeding with a cash withdrawal at the same ATM. But that is exactly what happens.

**<u>Plaintiff's Out of Network ATM Withdrawal</u>**

61. On January 27, 2020 Plaintiff withdrew $80 in cash from an out of network ATM in Bayamon, PR. As part of her withdrawal transaction, Plaintiff was prompted to check her balance, and she did so. She received no warning that doing so would incur a fee from the ATM owner or from her own bank. The ATM owner charged Plaintiff $1.99 for the cash withdrawal, but did not charge a fee for the balance inquiry. Later, FBPR charged Plaintiff two OON Fees – one for the balance inquiry and one for the cash withdrawal – of 50 cents and $1 respectively. Plaintiff would not have proceeded with the balance inquiry or the cash withdrawal if she had been notified by the ATM owner or by FBPR that she would be charged <u>three separate fees, totaling $3.49, for her $80 cash withdrawal.</u>

62. Plaintiff was shocked to discover that she was charged these two OON Fees by FBPR, in addition to the ATM owner's fee for the cash withdrawal, especially because she was not warned that the balance inquiry would incur any fee at all.

**CLASS ACTION ALLEGATIONS**

63. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated pursuant to Federal Rule 23. The Classes include:

> All FBPR checking account holders in the United States who within the applicable statute of limitations were assessed an OON Fee when they performed a withdrawal at an out-of-network ATM (the "OON Fee Class").

> All FBPR checking account holders in the United States who within the applicable statute of limitations were assessed two OON Fees when they performed a balance inquiry prior to withdrawing cash at an out-of-network ATM (the "Balance Inquiry Fee Class").

13

64. Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors, and the members of their immediate families, and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

65. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add subclasses if necessary before this Court determines whether certification is appropriate.

66. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because FBPR has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

   a) Whether FBPR improperly charged OON Fees;

   b) Whether any of the conduct enumerated above violates the contract;

   c) Whether any of the conduct enumerated above violates the covenant of good faith and fair dealing;

   d) Whether any of the conduct enumerated above constitutes unjust enrichment;

   e) The appropriate measure of damages.

67. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to FBPR's records. FBPR has the administrative capability through its computer systems

and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

68. It is impracticable to bring members' of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

69. Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by FBPR, as described herein.

70. Plaintiff is more than an adequate representative of the Classes in that Plaintiff has a FBPR checking account and has suffered damages as a result of FBPR's contract violations, FBPR's violations of the covenant of good faith and fair dealing, and FBPR's unjust enrichment. In addition:

- a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;
- b) There is no conflict of interest between Plaintiff and the unnamed members of the Classes;
- c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and
- d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

71. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

72. FBPR has acted or refused to act on grounds generally applicable to each of the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each of the Classes as a whole.

73. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Classes)

9. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Petition as if fully set forth herein.

10. Plaintiff and FBPR contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

11. FBPR breached the terms of the contract.

12. Plaintiff and members of the putative Classes have performed all of the obligations on them pursuant to the Bank's agreements.

13. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches.

### COUNT II
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Classes)

14. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-56 of this Petition as if fully set forth herein.

15. Plaintiff and FBPR contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

16. Puerto Rico mandates that an implied covenant of good faith and fair dealing govern every contract. For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

17. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

18. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

19. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

20. FBPR breached the covenant of good faith and fair dealing as explained herein.

21. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

22. Plaintiff and members of the putative Classes have performed all of the obligations imposed on them pursuant to the Deposit Agreement.

23. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

### COUNT III
### UNJUST ENRICHMENT
### (In the Alternative to COUNT I and COUNT II)
### (On Behalf of Plaintiff and the Classes)

24. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-56 of this Petition as if fully set forth herein.

25. This Count is brought solely in the alternative. Plaintiff acknowledges that his breach of contract claim cannot be tried along with unjust enrichment.

26. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

27. Plaintiff and the Classes conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for in the in the Deposit Agreement.

28. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

29. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23, appointing the Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B. Declaring that Defendant's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

C. Enjoining Defendant from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I. Awarding such other relief as this Court deems just and proper.


## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.


Dated: March 5, 2020.

Respectfully submitted,

BY:

Jeffrey Kaliel*
KALIEL PLLC
1875 Connecticut Avenue NW
10th Floor
Washington, DC 20009
(202) 150-4783
jkaliel@kalielpllc.com

**EDELSBERG LAW, PA**
Scott Edelsberg*
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave, #417
Aventura, FL 33180
Telephone: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis*
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Telephone: 305-479-2299
Fax: 786-623-0915

**INDIANO & WILLIAMS, P.S.C.**
David C. Indiano
david.indiano@indianowilliams.com
207 Del Parque Street, Third Floor
San Juan, PR 00912
Telephone: 787-641-4545
Fax: 787-641-4544

*s/ David C. Indiano*
**DAVID C. INDIANO**
U.S.D.C. Bar. No. 200601


*Attorneys for Plaintiff*

* *Pro hac vice* application to be promptly filed